1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    TOBY HENRY,                                No.  2:17-cv-02593-TLN-KJN

12                    Plaintiff,

13           v.                                  **ORDER**

14    ANGELINI PHARMA, INC.; TEVA
      PHARMACEUTICALS USA, INC.; and
15    ENDO VENTURES LIMITED,

16                    Defendants.

17

18           This matter is before the Court on Defendants Angelini Pharma, Inc. ("Angelini Pharma")

19    and Endo Ventures Limited's ("Endo Ventures") (collectively, "Defendants") Motions to

20    Dismiss.  (ECF Nos. 55, 56.)  Plaintiff Toby Henry ("Plaintiff") filed oppositions.  (ECF Nos. 62,

21    63.)  Defendants filed replies.  (ECF Nos. 67, 68.)  Also before the Court is Plaintiff's Motion to

22    Strike Angelini Pharma's reply.  (ECF No. 69.)  For the reasons set forth below, the Court

23    GRANTS Defendants' Motions to Dismiss and DENIES Plaintiff's Motion to Strike.

24    ///

25    ///

26    ///

27    ///

28    ///

                                                    1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a California resident, consumed a generic intermediate release formulation of trazodone hydrochloride[1] after his physician prescribed the drug for insomnia. (ECF No. 49 at 2.) After taking a 50-milligram dose of the drug on December 13, 2015, Plaintiff states that he developed a prolonged penile erection, also known as a priapism, which lasted over 24 hours. (*Id.*) Plaintiff alleges that he was unaware that trazodone carried a risk of priapism and that he was also unaware of the danger of erectile dysfunction from a prolonged erection lasting greater than six hours. (*Id.*) As such, Plaintiff did not seek medical attention for over 24 hours and is now impotent. (*Id.*)

By way of history, Plaintiff alleges that Desyrel, the brand-name intermediate release formulation of trazodone, was brought to market in the United States in the early 1980s. (*Id.* at 9.) According to Plaintiff, the Desyrel package insert included a warning about priapism in a very prominent position: at the top of the warnings section and in capital letters. (*Id.*) Plaintiff alleges this prominent warning about priapism initially continued after Desyrel was replaced by its generic equivalent, but the priapism warning eventually diminished sometime in 2012. (*Id.* at 10.) For example, Plaintiff alleges that the once-prominent priapism warning was no longer the highest listed, no longer capitalized, and was characterized as "rare" on the package insert for the trazodone he consumed in 2015. (*Id.*)

Plaintiff asserts claims of strict liability, negligence, breach of implied warranty, breach of express warranty, negligent misrepresentation, negligence per se, and punitive damages against Defendant Teva Pharmaceuticals USA, Inc. ("Teva"), which is the manufacturer of the generic trazodone he ingested, as well as Defendants Angelini Pharma and Endo Ventures, which are companies that were involved "in some meaningful way" with Oleptro, a brand-name extended release formulation of trazodone. (*Id.* at 2–3.)

Endo Ventures is the successor-in-interest of Labopharm Inc., the original Oleptro FDA New Drug Application ("NDA") holder, and Angelini Pharma is the current NDA holder for

---

[1]    Hereinafter, the Court will refer to trazodone hydrochloride as "trazodone" and will specify between generic and brand versions when necessary.

1  Oleptro.  (*Id.* at 4–5.)  Endo Ventures is an Irish pharmaceutical company with headquarters in

2  Ireland and a United States headquarters in Pennsylvania.  (*Id.* at 4.)  Plaintiff alleges that Endo

3  Ventures placed Oleptro into the United States stream of commerce, including California.  (*Id.*)

4  Angelini Pharma is a pharmaceutical company incorporated in Delaware and headquartered in

5  Maryland, and Plaintiff alleges that the company has systematic and continuous contacts to

6  California through marketing and placing Oleptro and other healthcare products into the stream of

7  commerce.  (*Id.* at 3–4.)

8          Plaintiff alleges that Oleptro is "virtually identical" to the drug that caused his injury

9  because other than being an extended release version, it has the same chemical formulation as the

10  generic trazodone he took.  (*Id.* at 11.)  According to Plaintiff, Oleptro's warning regarding

11  priapism was inadequate and based on false and misleading representations.  (*Id.* at 14, 19.)

12  Plaintiff further alleges it was reasonably foreseeable that generic trazodone manufacturers would

13  follow the Oleptro product labeling.  (*Id.*)  Finally, Plaintiff alleges that Teva, the manufacturer of

14  the generic trazodone Plaintiff ingested, did in fact change its warning label to match the Oleptro

15  packaging because Teva considered Oleptro to be an "innovator" in trazodone medications.  (*Id.*

16  at 20.)

17          **II.     STANDARD OF LAW**

18          Federal Rule of Civil Procedure ("Rule") 12(b)(2) allows a party to file a motion to

19  dismiss for lack of personal jurisdiction.  Plaintiff has the burden of establishing that the Court

20  has personal jurisdiction over Defendant.  *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715

21  F.3d 716, 741 (9th Cir. 2013), *aff'd sub nom.*, *Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015).

22  Where the Court does not hold an evidentiary hearing and the motion is based on the written

23  materials, Plaintiff need only establish a *prima facie* showing of personal jurisdiction.

24  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  In such a case,

25  "[u]ncontroverted allegations in the complaint must be taken as true" and "[c]onflicts between

26  parties over statements contained in affidavits must be resolved in the plaintiff's favor."  *Id.*

27          If there is no applicable federal statute governing personal jurisdiction, the Court applies

28  the law of the state in which it sits.  *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608–09

(9th Cir. 2010). "California's long-arm jurisdiction statute is coextensive with federal due process requirements." *Id.* Due process requires that for nonresident defendants to be subject to the Court's jurisdiction, defendants "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted).

The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: general jurisdiction or specific jurisdiction. A court may assert general personal jurisdiction over corporations "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation will primarily be "at home" for the purposes of general jurisdiction in two paradigmatic forums: its place of incorporation and its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). General jurisdiction is not limited to these two forums but will only be available elsewhere in the "exceptional case" where a corporation's affiliations with a forum are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139; *see also Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014).

Specific jurisdiction is satisfied when the defendant's activities are directed toward the forum state and the defendant's liability arises out of or relates to those activities. *Daimler*, 571 U.S. at 127. In the Ninth Circuit, courts employ a three-part test to determine whether a defendant's contacts suffice to establish specific jurisdiction: "(1) the nonresident defendant must have purposefully availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct; (2) plaintiff's claim must arise out of or result from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable." *Roth v. Garcia Marquez*, 942 F.2d 617, 620–21 (9th Cir. 1991) (emphasis omitted). Plaintiff bears the burden of satisfying the first two prongs, and if they are met, the burden shifts to Defendant "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Mavrix Photo*, 647 F.3d at 1228.

///

4

### III. ANALYSIS

As a preliminary matter, Plaintiff moves to strike Angelini Pharma's reply brief for exceeding the page limit. Arguably a motion to strike is not the proper mechanism for challenging the length of the reply. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."). Nor is it clear to the Court that Angelini Pharma's use of objections was intended to exceed the page limit set forth in the Court's scheduling order. However, regardless of whether Angelini Pharma did in fact exceed the page limit, the Court would arrive at the same conclusions even if it ignores Angelini Pharma's reply entirely. Therefore, the Court need not and does not consider Angelini Pharma's reply brief or objections and DENIES Plaintiff's motion to strike as moot. (ECF No. 69.)

Turning now to the motions to dismiss, Defendants argue that the Court lacks general or specific personal jurisdiction over them pursuant to Rule 12(b)(2).[2] In opposition, Plaintiff argues only that the Court has specific jurisdiction over Defendants. In the alternative, Plaintiff asks the Court to transfer the entire action to Maryland rather than dismiss should the Court conclude that it lacks personal jurisdiction over Angelini Pharma and Endo Ventures. The Court will address general jurisdiction, specific jurisdiction, and transfer in turn.

#### A. General Jurisdiction

Defendants argue that they are not "at home" in California for several reasons. Angelini Pharma asserts that it is incorporated in Delaware and its principal place of business is in Maryland. Angelini Pharma also asserts it has no operations, offices, or employees in California. Further, Angelini Pharma asserts that it did not supply the generic or brand-name version of the drug Plaintiff took but regardless, selling products in the forum, without more, is insufficient to establish general jurisdiction. Angelini Pharma asserts it ships its healthcare products nationwide, including to California, but its 2017 sales in at least seven other states far exceeded sales in

---

[2] Defendants also argue that Plaintiff fails to state a plausible claim for relief under Rule 12(b)(6). Because, as will be discussed, the Court lacks personal jurisdiction over Defendants, the Court need not and does not reach Defendants' Rule 12(b)(6) arguments.

1  California.  For its part, Endo Ventures simply argues that it is an Irish limited liability company

2  with its principal place of business in Ireland and any California business does not suffice to

3  establish general jurisdiction.

4          In opposition, Plaintiff fails to respond to Defendants' arguments regarding general

5  jurisdiction.  As discussed, a corporation will be "at home" for the purposes of general

6  jurisdiction in its place of incorporation and its principal place of business.  *Daimler*, 571 U.S. at

7  137.  Here, it is undisputed that Angelini Pharma is incorporated in Delaware and its principal

8  place of business is in Maryland.  It is also undisputed that Endo Ventures is an Irish company

9  with headquarters in Ireland and a United States headquarters in Pennsylvania.  Plaintiff makes no

10  effort to show that Defendants' contacts with California are "so substantial and of such a nature

11  as to render the corporation[s] at home in that State."  *Id.* at 139.  Rather, it appears Defendants'

12  only alleged continuous contacts with California are shipments and marketing of Oleptro and

13  other healthcare products to the state, which is insufficient without more to establish general

14  jurisdiction.  *See id.*  Thus, the Court lacks general jurisdiction over Defendants.

15                              B.        Specific Jurisdiction

16          Angelini Pharma argues that Plaintiff fails to show any connection between the forum, the

17  underlying controversy, and an activity by Angelini Pharma in California.  Angelini Pharma

18  argues that even if Plaintiff can show it was involved in the warning label for Oleptro, those

19  actions would have taken place in Maryland or New Jersey, and its distribution of other

20  healthcare products to California residents is unrelated to Plaintiff's claims.  Endo Ventures

21  similarly argues that there is no connection between Endo Ventures, Plaintiff, and California,

22  especially considering that Endo Ventures was no longer the NDA holder for Oleptro in 2011 —

23  the year before Teva allegedly changed its package insert for the generic trazodone taken by

24  Plaintiff.

25          In opposition, Plaintiff argues that the Court has specific jurisdiction because "although

26  Plaintiff's claims may not have arisen out of Defendants' contact with California, Plaintiff's

27  claim is almost certainly *related* to Defendant's contact with California."  (ECF No. 62 at 11.)

28  Plaintiff hinges this assertion on the conduct of one individual: Scot Van Steenburg.  Plaintiff

6

contends for the first time in his oppositions that between July 2010 and October 2011, Angelini-Labopharm — a joint venture between Labopharm (a company to which Endo Ventures is a successor-in-interest) and Angelini Pharma — employed Van Steenburg to market and sell Oleptro in the Los Angeles area. Plaintiff argues that "it is almost certain that [Van Steenburg] would have been well versed in the occurrence of side-effects of Oleptro . . . [and that] he would have relied upon information presented to the FDA in his discussions with practitioners, including the rate of occurrence of the priapism side-effect." (*Id.*) In other words, Plaintiff argues that Defendants, through Van Steenburg, promoted and/or marketed Oleptro in California, and in doing, so perpetuated a misrepresentation about the number of priapism cases linked to trazodone. The Court notes that Plaintiff's assertion appears to be based solely on a LinkedIn search by Plaintiff's counsel that resulted in Van Steenburg's profile.

As noted, courts in the Ninth Circuit employ a three-part test to determine whether a defendant's contacts establish specific jurisdiction: "(1) the nonresident defendant must have purposefully availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct; (2) plaintiff's claim must arise out of or result from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable." *Roth*, 942 F.2d at 620–21. Plaintiff bears the burden of satisfying the first two prongs, and if they are met, the burden shifts to Defendants to set forth a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

Plaintiff has not met his burden to show that his claim arose, resulted from, or was even related to Defendants' forum-related activities. Plaintiff's claim arises from taking a drug in California that was *not* manufactured by Angelini Pharma or Endo Ventures. As the Court understands it, Plaintiff's claim against moving Defendants is that he was injured because Teva, the manufacturer of the drug Plaintiff took, allegedly relied on inadequate warnings and misrepresentations about Oleptro in creating the warning label for the drug taken by Plaintiff. The trouble with this attenuated legal theory is that there is nothing that ties Plaintiff's claim to Defendants' activities in California. The only California-specific action Plaintiff offers is Van Steenburg's alleged marketing and selling of Oleptro in the Los Angeles area in 2010–2011 — at

7

least a year before Plaintiff alleges the prominent warning label for trazodone diminished — and Plaintiff merely alleges that Van Steenburg *likely* perpetuated misrepresentations about the side effects of trazodone during that time. Plaintiff does not include any of these allegations in the operative complaint, and the relatively barebones, speculative, and unsubstantiated information derived from Van Steenburg's LinkedIn page is not sufficient to tether Angelini Pharma and Endo Ventures to California. Even assuming — without having any way of knowing — that Plaintiff's assertions about Van Steenburg are true, Plaintiff fails to explain how the actions of a single salesman in California, marketing and selling a drug Plaintiff *did not take* to an unknown number of practitioners, four to five years before an injury that was caused by a different drug manufactured by Teva, has anything to do with Plaintiff's claims. Put another way, even if Van Steenburg perpetuated misrepresentations about the side effects of trazodone during his year as an Oleptro salesman, there is no indication that Van Steenburg's conduct had any effect on how Teva eventually labeled the trazodone product that allegedly harmed Plaintiff.

For all these reasons, the Court finds that it lacks specific jurisdiction over Angelini Pharma and Endo Ventures. The Court further finds that amendment would be futile. Therefore, the Court GRANTS Defendants' motions to dismiss with prejudice.

C.      Transfer

Plaintiff asks the Court in the alternative to transfer this action to the District of Maryland pursuant to 28 U.S.C. § 1631 rather than dismiss Angelini Pharma and Endo Ventures should the Court find that it lacks personal jurisdiction over them.[3] Section 1631 states in relevant part:

> Whenever a civil action is filed in a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed.

To transfer a case pursuant to 28 U.S.C. § 1631, the transferor court must lack jurisdiction, the transferee court must be able to exercise jurisdiction, and the transfer must serve

---

[3]      On March 6, 2020, the Court ordered the parties to file supplemental briefs in support or opposition of the transfer of this action pursuant to 28 U.S.C. § 1631. All four parties submitted supplemental briefs, which the Court has read and considered.

the interests of justice. *Rodriguez-Roman v. INS*, 98 F.3d 416, 424 (9th Cir. 1996). A case can

only be transferred to a district where it originally "could have been brought." 28 U.S.C. § 1631.

"This means the transferee court must have subject matter jurisdiction, proper venue, and

defendant must be subject to personal jurisdiction and be amenable to service of process in that

district." *Kennedy v. Phillips*, C11-1231-MJP, 2012 WL 261612, at \*4 (W.D. Wash. Jan. 30,

2012) (citing *Shapiro v. Bonanza Hotel Co.*, 185 F.2d 777, 780 (9th Cir. 1950)). "In cases

involving multiple defendants, the transferee district must be one in which personal jurisdiction

and venue requirements would have been satisfied *as to all defendants*." *Id.* (emphasis in

original). In deciding whether to transfer rather than dismiss, courts consider whether the failure

to transfer would prejudice the litigant and other equitable factors. *Cruz-Aguilera v. I.N.S.*, 245

F.3d 1070, 1074 (9th Cir. 2001).

Plaintiff argues that Maryland has personal jurisdiction over all Defendants. With respect

to Angelini Pharma, Plaintiff argues that Angelini Pharma's principal place of business is in

Maryland. With respect to Teva, Plaintiff argues that his claim relates to Teva's contacts with

Maryland because (1) Teva submitted an Abbreviated New Drug Application ("ANDA") to the

FDA in Maryland for the generic drug that allegedly caused Plaintiff's injuries, and (2) the

ANDA filing is "tightly tied, in purpose and planned effect, to the deliberate making of sales" in

Maryland. (ECF No. 86 at 3 (citing *Acorda Therapeutics, Inc. v. Mylan Pharms.*, 817 F.3d 755,

760 (Fed. Cir. 2016).) With respect to Endo Ventures, Plaintiff argues that Endo Ventures, as

successor-in-interest to Labopharm, is subject to specific jurisdiction because it was responsible

for the diminished priapism warning submitted to the FDA in Maryland for Oleptro. Finally,

Plaintiff asserts it is in the interest of justice to transfer the action because his action would be

barred by the statute of limitations without a transfer.

Plaintiff's argument that Maryland has specific jurisdiction over Endo Ventures and Teva

rests almost entirely on their submissions to the FDA. The parties do not cite a case directly on

point, but *Zeneca Ltd. v. Mylan Pharm., Inc.*, 173 F.3d 829 (Fed. Cir. 1999), is instructive. In

*Zeneca*, a patentee alleged that a drug manufacturer infringed its patent by filing an ANDA for a

generic version of the patented drug. *Id.* at 830. The defendant's only contact with Maryland

9

1    was the act of filing the ANDA with the FDA in Maryland.  *Id*.  The court concluded that

2    Maryland lacked personal jurisdiction due to the "government contacts" exception, which

3    provides that "entry into the District of Columbia by nonresidents for the purpose of contacting

4    federal government agencies is not a basis for the assertion of in personam jurisdiction."  *Id*. at

5    831.  The court emphasized that "[a]llowing jurisdiction based solely on the submission of [the

6    ANDA] would allow for the creation of a national judicial forum in Maryland for generic drug

7    infringement cases" and "[Defendant's] contact with Maryland arose out of the mere fortuity that

8    the government agency that must receive the Petition is located in Maryland."  *Id.* at 832.  In

9    other words, the *Zeneca* court essentially found that the defendant's contacts were with the

10   federal government agency located in Maryland, not the state of Maryland itself.  *Id.*

11           Plaintiff relies on *Acorda* for a contrary conclusion.  In *Acorda*, a brand name drug

12   manufacturer brought a patent infringement claim against a generic drug manufacturer.  817 F.3d

13   at 757–58.  At issue was whether Delaware could assert personal jurisdiction based solely on the

14   defendant's ANDA filing in Maryland — the defendant had not yet begun marketing the drugs in

15   Delaware.  *Id.* at 759–60.  The *Acorda* court held that Delaware had specific jurisdiction based on

16   the ANDA, which the defendant filed "for the purpose of engaging in that injury-causing and

17   allegedly wrongful marketing conduct in Delaware."  *Id.* at 760.  The court reasoned that within

18   the unique context of patent infringement claims, "the ANDA filings [were] tightly tied in

19   purpose and planned effect, to the deliberate making of sales in Delaware" and the suit was

20   "about whether that in-state activity [would] infringe valid patents."  *Id.*

21           The Court emphasizes that neither party cites controlling Ninth Circuit authority on this

22   issue.  Further, unlike *Zeneca* and *Acorda*, the instant action is not a patent infringement case, and

23   therefore the unique issues at play in those cases are distinct from the issues before this Court.

24   However, the Court shares the *Zeneca* court's concerns that asserting jurisdiction in this case

25   would be contrary to the "policy against the creation of national supercourts" in Maryland and

26   may offend due process.  *Zeneca*, 173 F.3d at 831.  Here, Plaintiff is a California resident who

27   was prescribed Teva's generic trazodone by his physician in California, the drug was dispensed

28   and ingested in California, and the resulting injury occurred in California.  The Court declines to

10

find that Teva and Endo Ventures are subject to specific jurisdiction in Maryland based on nothing more than their FDA filings and the unsubstantiated possibility that Teva also sold its drug in Maryland. Based on the limited information before this Court, it is not clear that Maryland can exercise personal jurisdiction over all Defendants.

Moreover, transfer to the District of Maryland is not in the interest of justice. While Maryland arguably has personal jurisdiction over Angelini Pharma since Angelini Pharma's principal place of business is in Maryland, it is unclear whether Maryland could exercise personal jurisdiction over Teva and Endo Ventures. Plaintiff also fails to argue that Maryland would be a proper venue. Notably, Plaintiff does not request that the Court sever the claims, but such a request would have been unavailing regardless. Based on the overlap in legal and factual issues as to all Defendants, transfer would only result in the same or similar issues being litigated in the Eastern District of California and the District of Maryland. Duplicative litigation does not promote the interests of justice. Finally, Plaintiff will not be unduly prejudiced because he may continue to seek relief against Teva before this Court. For all these reasons, the Court DENIES Plaintiff's request to transfer and DISMISSES Angelini Pharma and Endo Ventures from the action with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are hereby GRANTED. (ECF Nos. 55, 56.) The Court DENIES Plaintiff's request to transfer the action to the District of Maryland and DISMISSES Angelini Pharma and Endo Ventures from the action with prejudice. Further, Plaintiff's Motion to Strike is DENIED as moot. (ECF No. 69.) The remaining parties are ordered to file a joint status report within thirty (30) days of the date of electronic filing of this Order.

IT IS SO ORDERED.

DATED: March 30, 2020

Troy L. Nunley
United States District Judge

11